# IN THE UNITED STATES DISTRICT COURT
# DISTRICT OF KANSAS

**George Hall,**

    **Plaintiff,**

v.                                              **Case No. 11-2569-JWL**

**Kansas Commission on Veterans Affairs;**
**Wayne Bollig; and the State of Kansas,**

    **Defendants.**

## MEMORANDUM AND ORDER

Plaintiff filed this civil rights suit pursuant to 42 U.S.C. § 1983 against defendants after defendant Wayne Bollig made certain statements about plaintiff in a newspaper interview. In his complaint, plaintiff alleges that defendant Bollig's statements violated plaintiff's constitutional right to privacy; deprived plaintiff of his liberty and property interests in violation of the Due Process Clause; and violated plaintiff's First Amendment rights. This matter is presently before the court on defendants' motion to dismiss (doc. 15). As will be explained, the motion is granted in its entirety.[1]

**Factual Background and Legal Standard**

Plaintiff, a Vietnam veteran, alleges that he suffers from service-related post-traumatic

---

[1] In his complaint, plaintiff asserts a state law claim for intentional infliction of emotional distress. In light of the fact that the court dismisses plaintiff's federal claims, the court declines to exercise supplemental jurisdiction over this claim. *See* 28 U.S.C. § 1367(c)(3) (providing that a district court may decline to exercise supplemental jurisdiction over a claim if it has dismissed all claims over which it had original jurisdiction).

stress disorder (PTSD). In January 2003, he filed a claim for disability benefits with the Veterans Administration (VA). The VA denied plaintiff's claim and plaintiff filed an appeal. The VA dismissed plaintiff's appeal in 2004 after receiving a notice to withdraw the appeal apparently bearing plaintiff's signature. In 2009, plaintiff ultimately proved to an administrative law judge that the signature on the notice to withdraw had been forged and he was permitted to proceed with his appeal. Plaintiff's lengthy and unusual quest for benefits caught the attention of a news reporter and, in May 2010, the *Topeka Capital-Journal* published a news article detailing plaintiff's pursuit of service-related disability benefits. In connection with that article, the reporter interviewed plaintiff about his pursuit of benefits. The reporter also interviewed defendant Wayne Bollig, the veterans service program director at the Kansas Commission on Veterans Affairs, the state agency charged, among other things, with helping veterans to complete the paperwork necessary to obtain federal benefits. The portion of the article that is the focus of plaintiff's claims in this suit states as follows:

> Wayne Bollig, veterans service program director at KCVA, said staff encounters with Hall remain legendary in official circles. He said at least one KCVA administrator insisted that after one jarring telephone exchange with Hall he never wanted to speak with the man again.
>
> Bollig said in an interview Hall's mental deterioration occurred prior to enlistment in the Navy and that Hall demonstrated his lack of psychological balance by violently attacking a sibling.
>
> "He was denied benefits because of a pre-existing condition," Bollig said. "He beat his brother almost to death."

In his complaint, plaintiff alleges that he did not experience mental health problems before joining the Navy and that he does not have a brother.

Each of plaintiff's section 1983 claims stems from defendant Bollig's statements in the news article. Title 42 U.S.C. § 1983 provides in part that "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects . . . any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured." Plaintiff's claims here are asserted solely against defendant Bollig in his individual capacity.[2] Individual capacity suits "seek to impose personal liability upon a government official for actions he takes under color of state law." *Brown v. Montoya*, 662 F.3d 1152, 1163 n.8 (10th Cir. 2011). A § 1983 defendant sued in an individual capacity may be subject to personal liability "based on personal involvement in the alleged constitutional violation." *Id*. at 1163 (citation omitted).[3]

Government defendants sued under § 1983 in their individual capacities have qualified immunity: "government officials are not subject to damages liability for the performance of their discretionary functions when their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Id.* at 1164 (citation and quotation omitted). The court employs a two-part test to analyze a qualified immunity defense. "In resolving a motion to dismiss based on qualified immunity, a court must consider whether

---

[2]In his complaint, plaintiff initially asserted claims against the Kansas Commission on Veterans Affairs; the State of Kansas; and official capacity claims against defendant Bollig. Through the parties' briefing on the motion to dismiss, plaintiff has conceded that these claims are barred by the Eleventh Amendment.

[3]While a § 1983 defendant sued in an individual capacity may also be subject to supervisory liability, no allegations in the complaint support this theory of liability.

3

the facts that a plaintiff has alleged make out a violation of a constitutional right, and whether the right at issue was clearly established at the time of defendant's alleged misconduct." *Id.* (quoting *Leverington v. City of Colorado Springs*, 643 F.3d 719, 732 (10th Cir. 2011)).

In his motion to dismiss, defendant Bollig raises two primary arguments–that the complaint does not sufficiently allege a claim that defendant Bollig acted under color of state law and that he is entitled to qualified immunity on plaintiff's § 1983 claims.[4]  As explained below, the court concludes that plaintiff has alleged sufficient facts to state a plausible claim that defendant Bollig was acting under color of state law but that defendant Bollig is entitled to qualified immunity on plaintiff's claims.[5]

**Under Color of State Law**

As a threshold matter, defendant Bollig contends that his statements were not made "under the color of state law" as required for plaintiff's § 1983 claims. The "under-color-of-

---

[4]Defendant Bollig also contends that he has not been properly served with process on the grounds that plaintiff has not complied with Federal Rule of Civil Procedure 4(l)(1), which requires proof of service by the server's affidavit if service is not waived and if service is by someone other than a United States Marshal or deputy marshal. Here, the server has not submitted an affidavit. She has only "affirmed" that she served defendant Bollig but she has not done so under penalty of perjury. This defect, however, does not affect the validity of service. *See* Fed. R. Civ. P. 4(l)(3) (failure to prove service does not affect validity of service; court simply permits amendment of proof of service). This argument, then, is rejected.

[5]Defendant Bollig separately argues in his motion to dismiss that the facts alleged by plaintiff do not state a claim for relief under section 1983 because he has not sufficiently alleged the violation of a constitutional right. Because this argument is subsumed by the court's qualified immunity analysis, the court need not address it separately.

state-law element of § 1983 excludes from its reach merely private conduct, no matter how discriminatory or wrongful." *American Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 50 (1999). According to defendant Bollig, he was not exercising any power or authority given to him by the State of Kansas when he gave the interview to the newspaper reporter–he was simply answering questions posed by a curious reporter. The court agrees with plaintiff that he has alleged sufficient facts in his complaint to state a plausible claim that defendant Bollig was acting under color of state law for purposes of § 1983 during the newspaper interview.[6]

In the newspaper article, defendant Bollig is identified as the "veterans service program director at KCVA" who is responsible for coordinating "service veteran work of KCVA employees scattered across the state." It is certainly plausible that the statements attributed to defendant Bollig in the article stem from a knowledge of certain (alleged) facts gained only through his role and duties at KCVA. Stated another way, it appears that but for defendant Bollig's position with the KCVA, he would not have been interviewed by the reporter and he would have been in no position to make the allegedly stigmatizing and defamatory statements about plaintiff. Finally, there is no personal, private disagreement alleged between defendant Bollig and plaintiff that might be separated from defendant Bollig's official duties. Thus, the court cannot state as a matter of law that plaintiff will be unable to establish the requisite nexus between defendant Bollig's statements and his role with the KCVA. *See Bjorklund v. Miller*,

---

[6]Because the newspaper article is referenced in and central to plaintiff's complaint, the court may consider that article in analyzing the motion to dismiss without converting the motion to one for summary judgment. *See Smith v. U.S.*, 561 F.3d 1090, 1098 (10th Cir. 2009).

5

2012 WL 724219, at *10-11 (10th Cir. Mar. 7, 2012) (plaintiff made a sufficient showing on summary judgment that defendant's statements to newspaper were made under color of state law where the article identified defendant by her official roles; comments were related to her official roles; and she would not have been interviewed but for those roles).

**Qualified Immunity**

Defendant Bollig next contends that he is entitled to qualified immunity on plaintiff's section 1983 claims. In resolving this defense, the court considers whether the facts that a plaintiff has alleged make out a violation of a constitutional right and whether the right at issue was clearly established at the time of defendant's alleged misconduct *Brown v. Montoya*, 662 F.3d 1152, 1163 n.8 (10th Cir. 2011). In the circumstances presented here, the court has the discretion to determine which prong of the immunity defense to address first and may resolve the question by finding either requirement is not met. *Mascorro v. Billings*, 656 F.3d 1198, 1204 (10th Cir. 2011).[7]

*A.    Right to Privacy Claim*

Plaintiff alleges in Count I of his complaint that defendant Bollig violated his right to

---

[7]The Supreme Court has recently instructed that courts should address only (and deny relief exclusively based on) the second element of the qualified immunity defense in seven particular circumstances. *Camreta v. Greene*, ___ U.S. ___, 131 S. Ct. 2020, 2032 (2011). Because none of those circumstances is present here, the court exercises its discretion to analyze only the first element of the immunity defense.

6

privacy by publicly disclosing confidential information about plaintiff's medical condition–namely, by telling the reporter that plaintiff's "mental deterioration occurred prior to enlistment in the Navy" and that plaintiff "was denied benefits because of a pre-existing condition." Defendant Bollig contends that plaintiff has not alleged a constitutional violation because plaintiff voluntarily made public his post-traumatic stress disorder and, under such circumstances, defendant Bollig's statements about plaintiff's mental health cannot constitute a violation of plaintiff's privacy rights.

The threshold question, then, is whether there is a constitutional right to privacy that protects information concerning a person's health from being disclosed to others by government officials.[8] The answer, at least in the Tenth Circuit, is easily resolved. There is "no dispute that confidential medical information is entitled to constitutional privacy protection." *A.L.A. v. West Valley City*, 26 F.3d 989, 990 (10th Cir. 1994); *Herring v. Keenan*, 218 F.3d 1171, 1175 (10th Cir. 2000) (there exists a constitutional right to privacy that protects information concerning a person's health from being disclosed to others by government officials).[9] Defendant Bollig,

---

[8]While the parties do not address the statement separately, defendant Bollig's comment that plaintiff "beat his brother almost to death" is not protected by the right to privacy. While the information is sensitive in nature and potentially stigmatizes plaintiff (he denies that he even has a brother), he does not have a legitimate expectation of privacy in this allegation. *See Stidham v. Peace Officer Standards & Training*, 265 F.3d 1144, 1155 (10th Cir. 2001) (allegation that plaintiff assaulted a resident not protected by right to privacy).

[9]Although plaintiff does not identify the provision of the Constitution from which his privacy claim stems, the court assumes that plaintiff is relying on the general right of informational privacy found in the due process clause of the Fourteenth Amendment. *See Willan v. Columbia County*, 280 F.3d 1160, 1163 (7th Cir. 2002).

7

however, contends that he did not disclose any confidential information because plaintiff had already made that information public.

Neither of the parties direct the court to any factually analogous cases. The court's own research has revealed a case that the court finds particularly instructive on the facts. In *Lee v. Calhoun*, 948 F.2d 1162 (10th Cir. 1991), the plaintiff filed a lawsuit for medical malpractice alleging that the physician had misdiagnosed the plaintiff's condition and failed to obtain his consent for a surgical procedure. *Id*. at 1163-64. The nature of the lawsuit–and plaintiff's demand for $38 million in damages–attracted the attention of the news media. *Id*. at 1164. A reporter interviewed the defendant-physician, who explained (in an article published in the local newspaper) in essence that his diagnosis and treatment of plaintiff would have been different if plaintiff had informed the physician that "he was a carrier of the AIDS virus." *Id*. After the story appeared in the paper, the plaintiff amended his complaint to include, among others, a claim for invasion of privacy under Restatement (Second) of Torts § 652D. *Id*. at 1164-65.

Analyzing the common law privacy claim, the district court granted summary judgment in favor of the defendant-physician for two independent reasons. First, the court concluded that the plaintiff had become a "public figure" by filing his lawsuit and attracting the news media such that the defendant's statements were sufficiently related to the news story to preclude them from serving as the basis for an invasion of privacy claim. *Id*. at 1165-66. The court's conclusion was based on the language of section 652D, which provides in pertinent part that a person is liable to another for invasion of his privacy if the matter publicized is a matter that "is not a legitimate concern to the public." The Circuit affirmed this decision, holding that the

matters were of "legitimate public concern 'because of the public interest or debate regarding the size of litigation claims and jury awards . . . and the public concern in policing failures in the medical profession.'" *Id*. at 1165 (citing *Gilbert v. Medical Economics Co.*, 665 F.2d 305 (10th Cir. 1981) (affirming grant of summary judgment to defendant-publisher where matters published involving malpractice incidents were matters of legitimate public concern regarding competency of licensed professionals)).

The Circuit also affirmed the court on its conclusion that even if the plaintiff was not a public figure, summary judgment was nonetheless appropriate in favor of the defendant on the grounds that the physician's statements were conditionally privileged under section 594 of the Restatement (Second) of Torts. As explained by the Circuit, this section essentially provides "that one whose reputation is under attack has the right to defend himself:"

> A conditional privilege exists . . . when the person making the publication reasonably believes that his interest in his own reputation has been unlawfully invaded by another person and that the defamatory matter that he publishes about the other is reasonably necessary to defend himself. The privilege here is analogous to that of self-defense against battery, assault or false imprisonment . . . . Thus the defendant may publish in an appropriate manner anything that he reasonably believes to be necessary to defend his own reputation against the defamation of another.

*Id*. at 1166 (quoting Restatement (Second) of Torts § 594 cmt k). According to the Circuit, the defendant was "clearly" entitled "to provide information that affected his important interest in his own reputation as a medical provider." *Id*.

While the *Calhoun* case is not controlling on plaintiff's federal constitutional claim here, the Tenth Circuit has recognized that section 652D of the Restatement provides guidance in the

9

context of a federal constitutional privacy claim. *See Sheets v. Salt Lake County*, 45 F.3d 1383, 1388 n.1 (10th Cir. 1988) (recognizing that common law tort of invasion of privacy does not control federal constitutional claim but looking to the tort, as defined by section 652D of the Restatement, for guidance). The court, then, believes that the Circuit, as it did in *Sheets*, would look to the Restatement for guidance here, particularly in the absence of any compelling federal constitutional cases presenting similar facts.

Applying the principles of *Calhoun* to this case, the court agrees with defendant that plaintiff has not alleged sufficient facts to plausibly suggest that defendant Bollig violated plaintiff's right to privacy. Plaintiff became a public figure when his quest to obtain benefits (and his criticism of VA and KCVA officials) attracted the attention of the reporter and plaintiff voluntarily disclosed in that public forum both his mental health challenges and his contempt for certain VA and KCVA officials. Plaintiff asserts in the article that many officials within the system are "corrupt" and he states that he was "screwed over" by these corrupt officials despite the fact that his mental challenges are service-related such that he is entitled to benefits. Certainly, these are matters of public concern as the public has an interest in the ethics of a federal and state agency charged with assisting the nation's veterans. Because defendant Bollig's comments about plaintiff's mental health were relevant to that topic (by suggesting that the decision to deny benefits was not arbitrary or corrupt but that plaintiff was not entitled to benefits because his mental challenges pre-existed his military service), those comments cannot serve as the basis for an invasion of privacy claim. *See Howell ex rel. Goerdt v. Tribune Entertainment Co.*, 106 F.3d 215, 220-21 (7th Cir. 1997) (plaintiff could not "hide behind"

privacy law and "from that shelter pelt her stepmother with defamatory accusations with impunity. Such a privilege would distort the terms of public debate by giving an unjustified advantage to the [plaintiff].").

Alternatively, the court concludes that defendant Bollig's statements are conditionally privileged. Plaintiff publicly alleged that VA and KCVA officials were corrupt and suggested that his claim was denied (that he was "screwed over") based not on the merits of his claim but based on the wrongdoing of those officials. In such circumstances, defendant Bollig was entitled to defend his agency's reputation by explaining that plaintiff was not entitled to benefits in light of his pre-existing condition. In other words, by placing his mental health in controversy and by claiming publicly that those challenges are service-related, plaintiff cannot then be heard to complain when an individual publicly responds to that specific charge by stating that plaintiff's mental health challenges are not service-related.

For the foregoing reason, this claim is dismissed.

*B.    Due Process Claims*

In Counts II and III of his complaint, plaintiff alleges that defendant Bollig's statements deprived him of a liberty interest in his reputation and a property interest in his claim for veterans' benefits without affording him the procedural protections required by the Due Process Clause. With respect to his liberty interest claim, plaintiff alleges that Mr. Bollig's statements in the newspaper were made without affording plaintiff the opportunity to clear his name by proving that Mr. Bollig's statements were false. Plaintiff's property interest claim is based on

11

allegations that defendant Bollig's statements impeded plaintiff's pursuit of his disability benefits. As will be explained, plaintiff's due process claims are dismissed based on qualified immunity because plaintiff has not sufficiently alleged a deprivation of a liberty or property interest. *See Phelps v. Wichita Eagle-Beacon*, 886 F.2d 1262, 1268-69 (10th Cir. 1989); *see also Leverington v. City of Colorado Springs*, 643 F.3d 719, 732 (10th Cir. 2011) (dismissal based on qualified immunity appropriate if facts alleged do not make out a violation of a constitutional right). The court, then, need not address whether any right alleged by plaintiff was clearly established at the time of the alleged violation.

The court turns first to plaintiff's liberty interest claim. As the Tenth Circuit has explained:

> Where a person's good name, reputation, honor, or integrity is at stake because of what the government is doing to him, a protectible liberty interest may be implicated that requires procedural due process in the form of a hearing to clear his name. Damage to one's reputation alone, however, is not enough to implicate due process protections. *See Paul v. Davis*, 424 U.S. 693, 701 (1976) (stating that "reputation alone, apart from some more tangible interests such as employment, is neither 'liberty' or 'property' by itself sufficient to invoke the procedural protection of the Due Process Clause"); *McGhee v. Draper*, 639 F.2d 639, 643 (10th Cir. 1981) ("[S]tigmatization or reputational damage alone, no matter how egregious, is not sufficient to support a § 1983 cause of action.").
>
> Instead, a plaintiff asserting that the government has violated the Due Process Clause by impugning his or her good name, reputation, honor, or integrity, must demonstrate that: (1) the government made a statement about him or her that is sufficiently derogatory to injure his or her reputation, that is capable of being proved false, and that he or she asserts is false, and (2) the plaintiff experienced some governmentally imposed burden that "significantly altered [his or] her status as a matter of state law." This is sometimes described as the "stigma plus" standard.

*Gwinn v. Awmiller*, 354 F.3d 1211, 1216 (10th Cir. 2004) (additional quotations and citations

12

omitted). Defendant Bollig contends that plaintiff has not alleged the violation of a constitutional right because he has not alleged the "plus" part of the "stigma plus" standard–his complaint is devoid of any allegation that he suffered any change of status as a matter of state law. In response, plaintiff concedes that, despite defendant Bollig's statements, plaintiff successfully pursued his claim for veteran's benefits. Nonetheless, he contends that those statements "stymied" plaintiff's efforts by "presenting additional obstacles that plaintiff was required to overcome." Plaintiff does not explain how defendant Bollig's statements constituted "obstacles" or in what way he was required to "overcome" those statements. There is no suggestion that any person with responsibility for reviewing plaintiff's claim for benefits ever read the newspaper article (or otherwise had knowledge of the statements) or that defendant Bollig's statements had any bearing whatsoever on plaintiff's claim for benefits. Plaintiff, then, has not alleged that he suffered any tangible harm as a result of the alleged "obstacles" presented by defendant Bollig's statements.

The only other injury identified by plaintiff in his response as meeting the stigma-plus requirement is the prospect that he "may" incur injuries because the article is still available on the internet to "any person who wishes to read the story" and he will not have the opportunity to rebut defendant Bollig's statements. The Tenth Circuit, however, has emphasized that allegations of speculative future harm are too intangible to constitute a deprivation of a liberty interest. *See Phelps v. Wichita Eagle-Beacon*, 886 F.2d 1262, 1268-69 (10th Cir. 1989) (allegations that newspaper articles placed a "defamatory cloud" over "employment opportunities" insufficient to state claim for violation of a liberty interest under section 1983;

13

plaintiff's "existing legal rights" must be significantly altered before a claim arises). Plaintiff's allegations of potential future harm are insufficient to state a deprivation of a liberty interest under section 1983. Because plaintiff has not sufficiently alleged the deprivation of a liberty interest, defendant Bollig's motion to dismiss based on qualified immunity is granted.

To prevail on his property interest claim, plaintiff must first establish that defendant Bollig's actions deprived him of a protectible property interest. *Teigen v. Renfrow*, 511 F.3d 1072, 1078 (10th Cir. 2007). "[I]t is only after the plaintiff first demonstrates the existence and deprivation of a protected property interest that the plaintiff is constitutionally entitled to an appropriate level of process." *Id*. (citation omitted). In his submissions, plaintiff alleges that he had a protected property interest in his claim for veterans benefits and defendant Bollig does not challenge that contention. What plaintiff has not alleged, however, is a deprivation of that interest. *See Jordan-Arapahoe, LLP v. Board of County Com'rs*, 633 F.3d 1022, 1025 (10th Cir. 2011) (to state a claim for the deprivation of property without due process, plaintiff must allege facts plausibly suggesting that defendant deprived it of a protected property interest).

As noted earlier, he concedes that he successfully pursued his claim for benefits. While he contends that his pursuit was "impeded" by defendant Bollig's statements, plaintiff does not explain how defendant Bollig's statements had any impact whatsoever on the persons responsible for assessing and reviewing plaintiff's claim for benefits. There is no allegation that anyone at the Department of Veterans Affairs (the agency charged with rendering a determination on plaintiff's claim for benefits) read the article containing defendant Bollig's statements or had any knowledge of those statements. There is no allegation that defendant

14

Bollig's statements detrimentally delayed the processing of plaintiff's claim for benefits. In short, plaintiff has not alleged an actual deprivation of a property interest as a result of defendant Bollig's statements. In the absence of an allegation that he suffered a deprivation of a property interest, plaintiff's property interest claim must be dismissed based on qualified immunity.

C.     *First Amendment Retaliation Claim*

Finally, the court turns to plaintiff's First Amendment retaliation claim. In his complaint, plaintiff alleges that he exercised his First Amendment rights by discussing with the newspaper reporter the problems he encountered with the VA system and that defendant Bollig retaliated against him for talking to the reporter by providing to the reporter false and defamatory statements about plaintiff's medical condition and personal history. Defendant Bollig urges that dismissal of this claim is appropriate on the grounds of qualified immunity and, more specifically, on the grounds that plaintiff has not sufficiently alleged a constitutional violation.

A successful claim for First Amendment retaliation requires proof of the following elements: (1) that the plaintiff was engaged in constitutionally protected activity; (2) that the defendant's actions caused the plaintiff to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity; and (3) that the defendant's adverse action was substantially motivated as a response to the plaintiff's exercise of constitutionally protected conduct." *Worrell v. Henry*, 219 F.3d 1197, 1212 (10th Cir. 2000). Defendant Bollig does not dispute that plaintiff was engaged in constitutionally protected activity when he criticized the VA system to the newspaper for publication. Rather, defendant Bollig challenges whether

15

plaintiff has alleged an injury that would "chill a person of ordinary firmness from continuing to speak out." *Shero v. City of Grove, Oklahoma*, 510 F.3d 1196, 1203-04 (10th Cir. 2007).[10] As the Circuit has explained, the

> objective standard of a person of ordinary firmness is a vigorous standard; although the standard permits a plaintiff who perseveres despite serious injury from official misconduct to assert a constitutional claim, it is substantial enough that not all insults in public debate become actionable under the Constitution.

*Eaton v. Meneley*, 379 F.3d 949, 956 (10th Cir. 2004). A trivial or de minimis injury will not support a First Amendment retaliation claim. *See Shero*, 510 F.3d at 1203.

Plaintiff's complaint does not identify any injury that plaintiff suffered as a result of defendant Bollig's statements, let alone an injury that might chill a person of ordinary firmness from continuing to speak out. Similarly, plaintiff does not identify any such injury in his response to the motion to dismiss. He simply states that defendant Bollig "damaged plaintiff in a way" that would chill an individual from continuing to speak out. Plaintiff does not explain how he was damaged and the court cannot discern any injury from the facts alleged. As noted earlier, plaintiff successfully pursued his claim for benefits despite defendant Bollig's comments and there is no allegation that plaintiff declined other opportunities to talk to the press about his experience pursuing benefits or that his speech was hampered in any way. In short, there are no

---

[10]Defendant Bollig also suggests that his own speech could not have been motivated by plaintiff's speech because he and plaintiff were both interviewed for the same story prior to its publication. It is plausible, of course, that the reporter advised defendant Bollig about the nature of plaintiff's comments such that defendant Bollig was aware of those comments at the time he made his own statements to the reporter. At this juncture, the court cannot say as a matter of law that plaintiff would be unable to prove a set of facts supporting the claim that defendant Bollig was substantially motivated by plaintiff's speech.

16

facts alleged suggesting that defendant Bollig's statements had any effect on plaintiff's "continuing ability to express his views publicly or to further criticize" the VA system. *See How v. City of Baxter Springs, Kansas*, 217 Fed. Appx. 787, 798 (10th Cir. 2007). Plaintiff, then, has not stated a claim that would support a finding that his constitutional rights under the First Amendment have been violated. In the absence of a constitutional violation, defendant Bollig is entitled to qualified immunity. This claim is dismissed.

**IT IS THEREFORE ORDERED BY THE COURT THAT** defendants' motion to dismiss (doc. 15) plaintiff's § 1983 claims is granted. The court declines to exercise supplemental jurisdiction over plaintiff's state law claim and that claim is dismissed without prejudice.

**IT IS SO ORDERED.**

Dated this 9th day of April, 2012, at Kansas City, Kansas.

s/ John W. Lungstrum
John W. Lungstrum
United States District Judge

17